(50 App. Div. 538.)

PEOPLE ex rel. BRADY et al. v. MAXWELL, City Superintendent of Schools.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

PUBLIC SCHOOLS—TEACHERS—ELIGIBILITY.

    Laws 1850, c. 143, provides that the city superintendent of public schools of Brooklyn shall examine teachers and grant certificates, "which shall not be in force longer than a year." Laws 1873, c. 420, provides for the appointment of a "superintendent of public instruction" in said city by the board of education, authorizes it to fix and determine his duties, to be performed in such manner as the board shall prescribe, and repeals all acts in conflict therewith. Subsequently the board adopted by-laws providing that three grades of teachers' certificates should be issued, to be designated "A," "B," and "C," and in 1882 adopted a resolution to employ no teacher who did not hold an A or B grade certificate. By Laws 1888, c. 583, tit. 17, the board of education was given entire charge of all the public schools of the city, and authorized to make its own by-laws and define the duties of its officers, etc. Under this authority the board enacted by-laws authorizing the superintendent to issue certificates to be known as "Probationary Licenses," "Temporary B Certificates," "Permanent B Certificates," "A Certificates," "Head of Department A," and "Principal A," and providing that no teacher should be appointed unless he held the certificate necessary to show his qualification. Laws 1899, c. 644, which amends Greater New York Charter, § 1117, provides that all teachers' certificates granted by the superintendent of public instruction of Brooklyn prior to February 1, 1898, or "recognized" by the board of education of Brooklyn as in force at that date, unless revoked, be recognized by the city superintendent of schools of the city of New York, and shall entitle the holders to appointment to any position to which they are respectively eligible by the possession of such certificates. *Held*, that since C grade certificates issued by the city superintendent of schools of Brooklyn prior to 1882, under the authority of Laws 1850, c. 143, had expired by their own limitation, and had not been "recognized" as in force on February 1, 1898, Laws 1899, c. 644, did not operate to revive them.

Appeal from special term, Kings county.

Petition by the people of the state of New York, on the relation of Rose Brady and others, for a peremptory writ of mandamus against William H. Maxwell, city superintendent of schools of the city of New York, directing him to place the names of the relators on the list of those eligible to appointment as teachers in the public schools of the borough of Brooklyn. From an order granting the writ, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

William J. Carr (Luke D. Stapleton, on the brief), for appellant.
George W. Titcomb, for respondents.

WOODWARD, J. The relators have in their possession certain papers known as "C Certificates," or licenses to teach, issued by the

city superintendent of public schools some time prior to 1882. The authority to issue these certificates is found originally in chapter 143 of the Laws of 1850, which provides (section 5) that the superintendent of common schools "shall examine the qualifications of teachers, and grant certificates in such manner and form as may be prescribed by the state superintendent, which shall not be in force longer than a year, and may at any time be revoked by the board of education." This act was amended by chapter 112 of the Laws of 1857, but without materially altering this provision. By the provisions of chapter 420 of the Laws of 1873 the board of education was directed to elect a superintendent of public instruction, and one or more associate superintendents, and to "fix and determine the duties, powers and functions of the said superintendent and associate superintendents, so far as relates to their several departments," and by section 3 of the act it was provided that "all the duties now prescribed by law for the office of superintendent of common schools of the city of Brooklyn shall devolve upon, and be performed by, the superintendent and associate superintendents to be elected under the provisions of this act, in such manner as the said board shall prescribe." By section 5 of the same act it is provided, "All acts and parts of acts inconsistent with this act are hereby repealed." But it can hardly be said that an act which refers to acts in existence for the rule of conduct of the officials created repeals the original acts by such a clause. It merely repeals the acts and parts of acts inconsistent with the provisions of the enactment. The provision of the law of 1850 and 1857 that the city superintendent of common schools "shall examine the qualifications of teachers, and grant certificates in such manner and form as may be prescribed by the state superintendent, which shall not be in force longer than a year," is not inconsistent with a statute which provides that "all the duties now prescribed by law for the office of superintendent of common schools of the city of Brooklyn shall devolve upon, and be performed by, the superintendent and associate superintendents to be elected under the provisions of this act, in such manner as the board shall prescribe." In fact, it is the law which prescribes the duties, and to repeal it would be to destroy the rule of conduct which the legislature intended to establish. If we are right in this proposition, the law, at the time of the granting of the C certificates, limited the time of their effectiveness to one year. After that they ceased to be of any force or effect. The fact that the board of education may have construed the provisions of the laws of 1850 and 1857 to have been repealed, or that that body, in 1874, adopted by-laws providing that "there shall be three grades of certificates of fitness to teach granted by the superintendent, the first and second of which shall require a standard of scholarship equal to that demanded for graduation by pupils in the supplementary classes, which certificates shall be designated A, B, and C," can have no bearing upon the question; nor can the fact that the certificates do not show the time limit upon their face give any vitality beyond the period fixed by law.

It appears from the record that a large number of these C certificates were issued, and that in October, 1882, the board of educa-

tion adopted a resolution that "hereafter no teacher shall be employed by this board who does not hold a certificate of grade A or of grade B." In 1888 (chapter 583, tit. 17, § 5) the law governing the schools of Brooklyn was changed, and the board of education was given "entire charge and direction of all the public schools of said city, and of the school moneys raised for the support of the same," and it was to "possess the powers and be subject to the general duties of trustees of common schools in this state." It was also authorized to "make its own by-laws, keep a journal of its proceedings, define the duties of its officers and committees, and prescribe such rules and regulations for instruction and discipline in the said public schools as are not inconsistent with the laws of the state," etc. Acting under the authority of this act, the board of education, some time prior to the year 1895, enacted certain by-laws, which have remained in force since that time, in which the superintendent of public instruction is authorized to issue certificates, to be known as "Probationary Licenses," "Temporary B Certificates," "Permanent B Certificates," "A Certificates," "Head of Department A," and "Principal A." It is then provided that no one shall be appointed, temporarily or permanently, unless he shall have the certificate necessary to show his qualification in the grade for which he seeks such employment. It thus appears that since 1895 the holders of C certificates, even assuming them to have a lawful existence, would have no standing upon an eligible list; and the question presented upon this appeal is whether the relators gained any rights under the provisions of chapter 644 of the Laws of 1899, which amends section 1117 of chapter 378 of the Laws of 1897, which, in so far as it has any relation to the question here presented, reads as follows:

"And all licenses to teach, or certificates of qualifications for teaching, granted by the superintendent of public instruction of the city of Brooklyn, or by authority of the board of education of said city of Brooklyn, prior to February first, eighteen hundred and ninety-eight, or recognized by the board of education of said city of Brooklyn, or the state superintendent of public instruction as in force at that date in said city, shall, unless revoked for cause by the state superintendent of public instruction, be recognized by the city superintendent of schools. and the board of examiners of the city of New York, as in full force and shall entitle the holders to appointment or promotion to any position to which they were respectively eligible by the possession of such licenses or certificates."

As this statute seeks to regulate the discharge of the duties of a public officer, and to place upon the eligible list persons who would otherwise not be entitled to consideration, it is proper that it should be confined strictly to its terms. The certificates set out by the relators in their brief show that they were not issued by the "superintendent of public instruction of the city of Brooklyn," as provided in the statute now under consideration, nor yet by the authority of the board of education, but by the "city superintendent of public schools." Nor does it appear from the petition of the relators that these certificates were "recognized by the board of education of said city of Brooklyn, or the state superintendent of public instruction as in force at that date [February 1, 1898] in said city." On the contrary, it affirmatively appears from the record that the board of education,

by a by-law, which it was authorized to adopt, had limited the certificates which should be recognized to those enumerated in the by-law, which does not extend to C certificates. We are of opinion, therefore, that the C certificates held by the relators were governed by the earlier statutes, that they ceased to have any force or effect after the expiration of one year from the time of their issuing, and that chapter 644 of the Laws of 1899 does not operate to give them new life. This being true, the defendant owed the relators no duty, under the provisions of section 1081 of the Greater New York charter, and the peremptory writ of mandamus ought not to issue. The order appealed from should be reversed, and the motion for a peremptory writ of mandamus should be denied, with costs.

Order reversed, with $10 costs and disbursements, and application denied. All concur.